# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARRIE LYNNE VAUGHT-COADY, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-11-415-FHS-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

The claimant Carrie Lynne Vaught-Coady requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 6, 1976, and was thirty-four years old at the time of the administrative hearing. (Tr. 36, 164). She completed the twelfth grade, and has worked as a retail store manager, fast food cook, informal waitress, and sales clerk. (Tr. 45, 199). The claimant alleges inability to work since March 25, 2003 due to her bi-polar disorder. (Tr. 192).

## Procedural History

On September 25, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on January 14, 2011, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her Title II application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled as to her claim under Title II in a written opinion dated February 28, 2011. (Tr. 15-26). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of

work at all exertional levels, except that she was unable to work in environments which require exposure to high levels of dust or fumes. (Tr. 22). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a retail store manager, fast food cook, informal waitress, or sales clerk. (Tr. 25).

## Review

The claimant contends that the ALJ erred: (i) by improperly dismissing her Title XVI claim; (ii) by failing to find that the claimant had a severe mental impairment; (iii) by failing to properly evaluate the opinions of her treating physician, Dr. Charles Van Tuyl, and consultative examiner Denise LeGrand; (iv) by improperly assessing her RFC; and (v) by finding that she could return to her past relevant work. The undersigned Magistrate Judge finds that this case should be reversed because the ALJ failed to perform a proper step four evaluation.[3]

The record reveals that the claimant had the severe impairment of asthma/COPD. (Tr. 18). As to her mental impairments documented in the record, Dr. Van Tuyl treated the claimant through Choctaw Nation Hospital in 2007 and 2008 for bi-polar disorder. His treatment notes indicate that the claimant reported post-partum depression after giving birth to her son in 2003, that she had gone through in-patient treatment for bi-polar disorder in 1997, and that she did not remember having manic episodes but that her

---

[3] As to the claimant's Title XVI claim, the undersigned Magistrate Judge notes that her application for these benefits was filed one month before the ALJ issued his opinion as to her application for Title II benefits. Although she argues that the ALJ improperly dismissed her Title XVI claim, the ALJ's dismissal was merely a refusal to consolidate the two cases because the relevant time frames for these applications did not overlap. The government notes in its brief, and the undersigned Magistrate Judge agrees, that the Title XVI application was returned to the local field office and submitted for an initial determination, and therefore was not "dismissed" as the claimant has argued.

family would tell her when she was manic. (Tr. 467). The claimant reported some progress in her treatment, but was still depressed and had begun to experience a few audio/visual hallucinations in October 2008. (Tr. 457-466). On October 7, 2008, Dr. Van Tuyl completed a "Mental Status Form," stating that the claimant was not capable of remembering, comprehending and carrying out simple or complex instructions on an independent basis, or responding to work pressure, supervision, and co-workers "at this time." (Tr. 455). He stated that his diagnosis was: bipolar disorder II, panic disorder with agoraphobia, and generalized anxiety disorder. (Tr. 455). Additionally, he stated that she could not handle funds because she had a tendency to go on spending sprees when her parents were not managing her finances. (Tr. 455). On November 24, 2008, a state reviewing physician found that there was insufficient evidence to find a severe mental impairment. (Tr. 468-480). On September 2, 2009, Dr. Van Tuyl completed a Mental Medical Source Statement, that was to cover the claimant's status from December 31, 2007 to September 2, 2009. (Tr. 562-565). He found that she had marked or severe limitations in almost all of the areas of functioning, and stated in his Functional Capacity assessment that "Pt has long history of bipolar disorder. She has both manic and depressive episodes. She is not able to tolerate even mild stress. I consider her unemployable due to her mental disorder." (Tr. 565).

Dr. Johnson Gourd completed a consultative examination of the claimant's impairments on July 31, 2010. He found that the claimant had a normal range of motion; that she could lift/carry up to 20 pounds frequently, sit six hours in an eight-hour workday, and stand/walk four hours in an eight-hour workday; that she could never be

exposed to dust, odors, fumes, and pulmonary irritants; that she could only tolerate occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, and extreme heat; and that she could handle frequent exposure to operating a motor vehicle and vibrations. (Tr. 573-577). On August 9, 2010, licensed Clinical Psychologist Denise LaGrand completed a Mental Status/Diagnostic evaluation. Following this consultative examination. Ms. LaGrand assessed the claimant with schizoaffective disorder and personality disorder, NOS (borderline, avoidant traits), and assigned her a Global Assessment of Functioning (GAF) score of 50. (Tr. 589). Ms. LaGrand found that the claimant had a low to below average estimate of being able to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers. (Tr. 589). She further noted that the claimant had moderate limitations in the ability to interact appropriately with the public, supervisors, or co-workers, as well as to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 594). She based this on the claimant's mental healthcare provider's assessment that the claimant had the limited ability to deal with stress. (Tr. 594).

At the first administrative hearing held before ALJ Trace Baldwin, the claimant testified as to her work history that she had worked off and on at a restaurant that was owned by family friends. She stated that they let her work for them off and on, but that she never worked there for longer than three months at a time due to "a medicine change or some kind of breakdown" that would occur. (Tr. 56). She testified that she stopped working entirely due to anger and anxiety because she would usually get angry with co-

workers and disappointed in herself. (Tr. 59). She stated that she has been getting mental health treatment since she was very young, and that her depression makes her unable to complete most tasks and causes her to be unmotivated. (Tr. 59-60). She stated that she used to be able to shop and "do family oriented things," and that she used to be social, but that things have gotten harder and she can no longer handle a full time job because she had bi-polar disorder and her doctors were adjusting her medications a lot. (Tr. 61-62). At the second administrative hearing, held because the original ALJ became ill, ALJ Kirkpatrick asked the claimant about the treatment and medications for her asthma and bi-polar disorder. (Tr. 39-42). She further testified that she does not handle stress well and had lost almost "every job" because she would get upset, "have a breakdown and cry and scream and leave." (Tr. 43).

The claimant's mother completed a Third Party Function Report, stating that she had to help take care of the claimant's son 75% of the time, that the claimant had essentially quit preparing meals in the past three to five years because she lacked motivation, was sick, or had money problems. (Tr. 238-239). Her mother further stated that the claimant was not very social, did not handle crowds well, and would experience anxiety at most social gatherings including family events. (Tr. 241).

In his written opinion, the ALJ summarized the claimant's testimony and her mother's Third Party Function Report, as well as the medical evidence. At step two, he specifically found both the claimant's mental impairment and her obesity to be nonsevere. He discussed the relevant evidence as to her mental impairment at that step, but made no mention of either of her nonsevere impairments at step four.

The ALJ found that the claimant suffered from the severe impairment of asthma/COPD. (Tr.18). Under such circumstances, the failure to find the claimant' mental impairment and/or obesity severe as step two would ordinarily be harmless error because the ALJ would nevertheless be required to consider effects of the mental impairment and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ neither evaluated the severity of the claimant's mental limitations nor accounted for them in assessing his RFC. *See Grotendorst*, 370 Fed. Appx. 879, 884 (10th Cir. 2010)

("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

The ALJ failed to properly assess the claimant's RFC at step four. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairments and obesity and whether they had additional and cumulative effects when assessing her RFC. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding by the Court that correct legal standards were not applied and that the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge therefore RECOMMENDS that the Commissioner of the Social Security Administration's decision be REVERSED and the case REMANDED to the ALJ for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma